National Union Fire Insurance Company v. Commissioner.
National Union Fire Ins. Co. v. Commissioner
Docket No. 9116.
United States Tax Court
1946 Tax Ct. Memo LEXIS 48; 5 T.C.M. (CCH) 927; T.C.M. (RIA) 46260; October 29, 1946
*48 A fire insurance company which is within the provisions of section 204, I.R.C., organized and maintaining its home office in Pennsylvania was entitled to use the Convention Form of underwriting and investment exhibit of Annual Statement submitted to State Insurance Commissioner in computing its gross income for Federal income tax purposes without making adjustments for transactions with unadmitted companies not shown on Convention Form and without adjustments respecting increases in agents' and home office premium balances over three months due. Commissioner v. New Hampshire Fire Insurance Co., 146 Fed. (2d) 697, affirming 2 T.C. 708, followed. Norman D. Keller, Esq., for the petitioner. Homer Benson, Esq., for the respondent. LEECH
Memorandum Opinion LEECH, Judge: This proceeding involves a deficiency in income taxes for the calendar year 1943 in the amount of $104,872.61. The contested issues are whether the respondent erred (a) in adding $26,843.03, representing the increase during the taxable year in agents' and home office premium balances over three months due; and (b) in adding $67,383.94, representing *49 the increase during the taxable year of $43,348.90 in unearned premium reserve for unauthorized reinsurance with unadmitted companies, and the increase during the year of $24,035.04 in the amount of reinsurance recoverable from unadmitted companies on paid and unpaid losses. All the facts are stipulated and are set forth herein as follows: [The Facts] 1. Petitioner is a stock fire insurance company incorporated under the laws of the Commonwealth of Pennsylvania and is subject to the statutes of Pennsylvania pertaining to the regulation of fire insurance companies and the rules and regulations promulgated by the Insurance Commissioner of Pennsylvania with regard to its operations and methods of conducting business. For Federal income tax purposes it is subject to the provisions of Section 204 of the Internal Revenue Code. 2. Petitioner's principal office is at 139 University Place, Pittsburgh, Pennsylvania. Its original and amended income tax returns for the calendar year 1943 were filed with the Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania, at Pittsburgh, Pennsylvania. 3. Petitioner, in making the Annual Statement *50 of its operations and condition for the calendar year 1943 to the Insurance Commissioner of Pennsylvania, used the form required by the rules and regulations of the Insurance Commissioner of Pennsylvania. Said form is known as the "Convention Form" and has been approved and its use prescribed by the rules and regulations of the National Convention of Insurance Commissioners. * * * 4. Upon its original and amended returns for the calendar year 1943 the petitioner computed its underwriting and investment income on the basis of its Annual Statement to the Insurance Commissioner of Pennsylvania for the said year. * * * 5. On its Annual Statement for the year 1943 the petitioner deducted as an asset not admitted (Item 34, page 4) the amount of $141,059.22, representing agents' and home office premium balances over three months due as of December 31, 1943. These balances represented premiums on policies written by agents and brokers prior to October 1, 1943, which premiums had not been paid to the company as of December 31, 1943. 6. On its Annual Statement for the year 1942 the petitioner similarly deducted as an asset not admitted the amount of $114,216.19, representing agents' and *51 home office premium balances over three months due as of December 31, 1942. 7. The aforesaid amounts of $141,059.22 and $114,216.19 were included in Items 30 and 31, respectively, under Underwriting Profit and Loss Items on page 10 of the Annual Statement for the year 1943 with the result that underwriting income for the year 1943 was reduced by the difference between these two amounts, or $26,843.03. The amount of $26,843.03 represents the increase in the so-called agents' and home office premium balances over three months due at December 31, 1943, over the amount of such balances at December 31, 1942, and bears no relationship to the actual worthlessness of the balances. When any so-called agents' and home office premium balances over three months due are actually determined to be worthless they are removed from the over three months due account on the petitioner's books and are transferred to the agents' balances charged off account. The result of such treatment is that agents' and home office premium balances over three months due are reduced by the amount so transferred and such amounts are not reflected in agents' and home office premiumbalances over three months due at the *52 end of the year. The agents' balances actually determined to be worthless and charged off during the year 1943 were set out separate and apart from the amount of $26,843.03 and were claimed and allowed as a separate deduction, in computing taxable income for the taxable year 1943. 8. On its original and amended Federal income tax return for the year 1943 the petitioner deducted the aforesaid amount of $26,843.03 as "Loss in 1943 on Premium Balances over 90 days old." In his notice of deficiency the respondent added the said amount of $26,843.03 to income. 9. During the year 1943 the petitioner, in accordance with accepted practice of the insurance business, reinsured portions of its risks with other insurance companies. Some of such reinsurance was placed with companies domiciled in foreign countries and not authorized to do business in any of the states of the United States. Hereinafter such companies are referred to as "unadmitted companies" and such reinsurance is referred to as "unauthorized reinsurance." 10. On its Annual Statement for the year 1943, in computing the amount of premiums unearned (Schedules VII and VIII, page 7 of the Annual Statement), the petitioner reduced *53 gross unearned premiums by the amount of premiums paid by it for reinsurance both authorized and unauthorized. Because gross unearned premiums were reduced by premiums paid for unauthorized reinsurance in unadmitted companies the amount shown on Schedules VII and VIII as premiums unearned as of December 31, 1943, or $10,762,623.13 ($7,737,276.26 plus $3,025,346.87) was $366,504.70 less than it would have been had gross unearned premiums not been reduced by premiums paid for unauthorized reinsurance in unadmitted companies. 11. The petitioner's computation of unearned premiums as of December 31, 1942, was identical in form with the method described in paragraph 10 of this stipulation and as a result the amount of unearned premiums as of December 31, 1942, or $9,927,729.55 (Item 2 on page 10 of the Annual Statement) was $423,778.85 less than it would have been had gross unearned premiums not been reduced by premiums paid for unauthorized reinsurance in unadmitted companies. 12. Because unearned premiums as of December 31, 1942, and December 31, 1943, were reduced by premiums paid for unauthorized reinsurance, earned premium income (Item 5, page 10 of the Annual Statement) was less *54 by the amount of $57,274.15 ($423,778.85 less $366,504.70) than it would have been had the unearned premiums at the end of the preceding year and at the end of the year 1943 not been reduced by premiums paid for unauthorized reinsurance. For this reason the petitioner on its Annual Statement included the amount of $57,274.15 in adjustments to income (Item 69, line 28, page 11 of the Annual Statement), thereby reflecting the decrease in premiums paid for unauthorized reinsurance and increasing its income by said amount. 13. On its Annual Statement for the year 1943, in computing the amount of reinsurance recoverable on December 31, 1943, on paid and unpaid losses (Columns 1 and 2 of Schedule E on page 12 A, Item 12 on page 4, Column 5 on page 5 and Item 11 on page 10 of the Annual Statement) the petitioner included therein an amount of $126,594.00 recoverable from unadmitted companies. 14. Petitioner similarly (see paragraph 13 above) computed the amount of reinsurance recoverable on December 31, 1942, on paid and unpaid losses and included therein an amount of $190,044.70 recoverable from unadmitted companies. 15. Because reinsurance recoverable from unadmitted companies was *55 included in computing reinsurance recoverable on paid and unpaid losses, the losses reported as incurred for 1943 (Item 14, page 10 of the Annual Statement) were greater by the amount of $63,450.70 ($190,044.70 less $126,594.00) than they would have been had reinsurance recoverable from unadmitted companies not been included in computing insurance recoverable on paid and unpaid losses. For this reason the petitioner on its Annual Statement included the amount of $63,450.70 in adjustments to income (Item 69, line 29, page 11 of the Annual Statement), thereby reflecting the decrease in reinsurance recoverable from unadmitted companies on paid and unpaid losses and increasing its income by said amount. 16. The amount of premiums paid for unauthorized reinsurance as of December 31, 1943, taken into account on Schedules VII and VIII, page 7, in Items 2, 4 and 5, page 10, and in Item 69, line 28, page 11 of Annual Statement and the amount of reinsurance recoverable from unadmitted companies on paid and unpaid losses as of December 31, 1943, taken into account in Columns 1 and 2, Schedule E on page 12 A, in Item 14, page 10 and Item 69, line 29, page 11 of the Annual Statement were estimated *56 and not the final amounts, since the final and correct figures could not be obtained at December 31, 1943, because of delays in the mails due to the war in the Pacific. 17. The petitioner received the final and correct figures before filing its original Federal income tax return. Such corrected figures showed that the amount of premiums paid for unauthorized reinsurance as of December 31, 1943, was $467,127.75 instead of $366,50l.70 as used in the Annual Statement and that the amount of reinsurance recoverable from unadmitted companies on paid and unpaid losses as of December 31, 1943, was $214,079.74 instead of $126,594.00 as used in the Annual Statement. As a result of such corrected figures the reserve for premiums paid for unauthorized reinsurance as of December 31, 1943, exceeded such reserve as of December 31, 1942, by the amount of $43,348.90 ($467,127.75 less $423,778.85), whereas the reserve in the Annual Statement had shown a decrease of $57,274.15 between December 31, 1942, and December 31, 1943. Also, as a result of such corrected figures, the amount of reinsurance recoverable from unadmitted companies on paid and unpaid losses as of December 31, 1943, exceeded said amount *57 recoverable as of December 31, 1942, by the amount of $24,035.04 ($214,079.74 less $190,044.70), whereas the Annual Statement showed a decrease in such amounts between December 31, 1942, and December 31, 1943, of $63,450.70. These changes in the figures from $366,504.70 to $467,127.75 and from $126,594.00 to $214,079.74 do not represent additional reinsurance above the total amounts set forth in the Annual Statement for 1943 due from all companies but represent merely a correction of existing reinsurance as between authorized and unauthorized reinsurance, increasing unauthorized reinsurance and decreasing authorized reinsurance as of December 31, 1943, by the amount of $100,623.05 and increasing unauthorized reinsurance recoverable and decreasing authorized reinsurance recoverable as of December 31, 1943, by $87,485.74. 18. On its original and amended Federal income tax return for the year 1943 the petitioner reported as net premiums earned the amount of $10,660,055.01 as shown on its Annual Statement (Item 5, page 10) and deducted the amount of $67,383.94, representing the sum of the increase during the year of $43,348.90 in its reserve for unauthorized reinsurance as adjusted (see-paragraph *58 17) and the increase during the year of $24,035.04 for amounts of reinsurance recoverable from unadmitted companies on paid and unpaid losses as adjusted (see paragraph 17). The respondent in his notice of deficiency disallowed in full the deduction of $67,383.94. 19. The Commissioner of Insurance of the Commonwealth of Pennsylvania requires Pennsylvania fire insurance companies to make Annual Statements to him on the Convention Form, which is a form approved by the National Convention of Insurance Commissioners. The Convention Form is accepted and prescribed by all of the states in the United States. The Pennsylvania Insurance Department requires fire insurance companies doing business in Pennsylvania to use this form in making their Annual Statements. 20. It is the established practice of the Commissioner of Insurance of Pennsylvania, which is in conformity with the requirement of the Convention Form of annual statement, to require fire insurance companies to eliminate agents' and home office premium balances over three months due in computing admitted assets. Any fluctuation in such over three months due balances between the beginning and end of the year, is required to be *59 shown as a gain or a loss in income as the case may be. It is the accepted practice in all states of the United States to treat agents' and home office premium balances over three months due in this manner. 21. It is the established practice of the Insurance Commissioner of Pennsylvania with respect to reinsurance in companies domiciled in foreign countries and not authorized to do business in any of the states of the United States to permit no credits upon the Annual Statement for such reinsurance. The companies doing business in Pennsylvania must report unauthorized reinsurance as though they were carrying the reinsurance themselves and must set up and maintain full reserves for all such reinsurance until the risk has expired. It is the accepted practice in all states of the United States to treat reinsurance with unadmitted companies in this manner. 22. The requirements of the Insurance Commissioner of Pennsylvania with respect to unearned premiums on reinsurance with unadmitted foreign companies mean that the unearned premium reserve at the end of the previous year and at the end of the current year are not to be reduced by such unauthorized reinsurance and any increase in *60 the reserve carried for unauthorized reinsurance is to be taken into account in determining premiums earned during the year. 23. The requirements of the Insurance Commissioner of Pennsylvania as to unauthorized reinsurance in connection with paid and unpaid losses mean that reinsurance recoverable from unadmitted companies is not to be taken into account in reduction of paid and unpaid losses as of the end of the preceding year and the end of the current year. 24. On its Annual Statement to the Commissioner of Insurance of Pennsylvania for years prior to 1943 the petitioner reported agents' and home office premium balances over three months due, premiums paid for unauthorized reinsurance with unadmitted companies, and reinsurance recoverable from unadmitted companies on paid and unpaid losses in the same manner as these items reported on its Annual Statement for the year 1943. 25. In computing its net income for Federal income tax purposes on its Federal income tax returns for years prior to 1943 the petitioner claimed and was allowed as deductions agents' balances and other debts which became worthless within the respective taxable years. No deduction was claimed on the returns *61 or allowed in years prior to 1943 for increases in agents' and home office premium balances over three months due. 26. In computing its net income for Federal income tax purposes on its Federal income tax returns for years prior to 1943 the petitioner treated unauthorized reinsurance with unadmitted companies in the same manner as reinsurance with admitted companies. Such treatment was accepted by the respondent for such prior years. 27. On or before December 1, 1944, the petitioner filed claims for refund for the calendar years 1941 and 1942 claiming deductions for each of the said years of the increase during each year in its reserve for unauthorized reinsurance and its reserve for agents' and home office premium balances over three months due. [Opinion] Petitioner contends the case of New Hampshire Fire Insurance Co., 2 T.C. 708; affd., 146 Fed. (2d) 697, controls both the issues presented in this proceeding. On brief, the respondent concedes that issue (b) above is substantially the same as that involved in the cited case where it was decided adversely to his present contention. He takes the position, however, that the New Hampshire Fire Insurance *62 Co. case, supra, was erroneously decided. He has not acquiesced in the decision in that case, but made no application for certiorari to the Supreme Court. We are unable to discern any new or convincing argument made by the respondent in the instant case, that would justify a reversal of our former position. Issue (a) above is whether agents' and home office premium balances over 90 days past due at the end of the taxable year, even though not ascertained to have become worthless during the taxable year, are then deductible. That issue was not directly involved in the New Hampshire Fire Insurance Co. case, supra. The rule recognized in that case, however, and as set out in the headnote therein is that "* * * petitioners' income tax returns must be based on the Convention Form and their income taxes computed on the basis of transactions there reported." In deducting the past due balances involved here, petitioner was treating such items in accordance with the Convention Form of Annual Statement submitted as required to the Insurance Commissioner of the State of Pennsylvania. Hence, we think the disposition of this issue is likewise controlled by the decision in the New Hampshire *63 Fire Insurance Co. case, supra. Upon this issue respondent is also reversed. Since other adjustments made by respondent are not contested, Decision will be entered under Rule 50.